IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| SHONDRA H.,[1] | Case No. 1:23-cv-00008-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Shondra H. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is AFFIRMED.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming,

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.     Plaintiff's Application

Plaintiff alleges disability based on fibromyalgia, chronic back pain, arthritis, anxiety, and depression. Tr. 68.[2] At the time of her alleged onset date, she was 54 years old. Tr. 68. She has completed high school and has past relevant work as a graphic artist. Tr. 23, 206.

Plaintiff protectively applied for DIB on September 21, 2019, alleging an onset date of November 16, 2017. Tr. 68-69. Her application was denied initially on February 20, 2020, and

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

on reconsideration on February 19, 2021. Tr. 73-74, 90-91. Plaintiff subsequently requested a hearing, which was held on November 16, 2021, before Administrative Law Judge ("ALJ") Deborah Van Vleck. Tr. 30. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 30-66. A vocational expert ("VE"), Valerie Allen, also testified. Tr. 62-65. On December 15, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 24. Plaintiff requested the Appeals Council review ALJ Van Vleck's decision, which was denied on November 17, 2022. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## II. Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's]

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 10).

physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.   The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 12.

At step two, the ALJ determined that plaintiff has the following severe impairments: "obesity, aggravating fibromyalgia, degenerative disc disease of the thoracolumbar spine, and hypertension." Tr. 13.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. The ALJ then resolved that plaintiff had the RFC to perform light work with the following limitations:

> [She] can stand and/or walk for no more than four hours in an eight-hour workday. [She] can engage in no more than frequent reaching, including overhead reaching, frequent handling, and frequent fingering, bilaterally. [She] can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. [She] can frequently balance, stoop, kneel, and crouch, but can never crawl. [She] can never work in the presence of unprotected heights or hazardous machinery, and should not be required to operate a motor vehicle as part of her job duties.

Tr. 17.

At step four, the ALJ found that plaintiff had past relevant work as a graphic artist. Tr. 23. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 24.

## DISCUSSION

Plaintiff argues that the ALJ committed two errors: (1) failing to identify specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony; and (2) improperly rejecting the medical opinions provided by Anthony Browning, RN, Anne Pelletier, NP, and Dr. Michael Duffin, M.D.

**I.     Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject her symptom testimony. Pl.'s Opening Br. 8-12. Specifically, Plaintiff argues that her fibromyalgia, and resulting pain, causes her to be physically disabled, and that the ALJ erred in concluding that her testimony on this issue was not supported by the medical evidence. Pl. Opening Br. 10-13. This Court disagrees.

### A.     Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

B.      **Plaintiff's Testimony**

At the hearing, plaintiff reported that she could not work on a regular, full-time basis because of the pain she experiences from her fibromyalgia, as well as her anxiety. Tr. 51. She testified that her biggest barriers to employment are her anxiety and back and fibromyalgia pain. *Id*. When asked about her medications, plaintiff stated that she takes Gabapentin, Cymbalta, Tizanidine, Clonazepam, Busprione, Propanalol, and Naproxen for her pain and anxiety. Tr. 51-53. She explained that the medications make her drowsy and that they sometimes cause dizziness. Tr. 53. Even with her medications, she stated that she can only walk about half a block, that she can only stand or sit up to 30 minutes at a time, that she can lift and carry up to 10 pounds so long as she does not have to do it "very often," that she has issues opening her medications, and that she has no problems taking care of her personal hygiene. Tr. 54. She further testified that she sometimes prepares meals for herself and her family, that she grocery shops once every two weeks but mostly sends her daughter to do it, that her daughter does her laundry for her, and her activities generally involve watching television or playing board games when her granddaughter visits. Tr. 54-55. She stated she does not do much cleaning because it takes her all day, and she spends most of her day lying down, sitting with her legs elevated, or walking around her house, and that while she has pets, her daughter takes primary responsibility for them. Tr. 56-57. As for her previous work, she testified that she worked as a marketing assistant for a casino from at least 2004 to 2014, when she lost her job due to her having to take care of her mother following a major surgery. Tr. 48-49.

When asked about her ability to work, plaintiff testified that she could not do a job involving gripping, grasping and handling, that her anxiety causes her to have panic attacks when she is around too many people, that she grocery shops in the morning to avoid people, that she

would need instructions repeated to do even simple tasks, that she could not maintain attention and concentrate for two hours at a time, that she would need extra breaks to alleviate her pain, that she would need to lie down two or three times throughout the day, that she would miss at least two days a week of work, and that she could maybe work up to three hours consistently. Tr. 58-61.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 18. The ALJ reasoned that plaintiff's testimony of her disabling limitations was inconsistent with evidence from the medical record. Tr. 19-21.

### C.   Inconsistent Medical Record

Plaintiff argues that the ALJ erred because she rejected plaintiff's testimony "based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." Pl. Opening Br. 10. Plaintiff also argues that the ALJ's citations to the medical record did not support her conclusions that the medical evidence was inconsistent with plaintiff's symptom testimony. *Id*. 11-13. This Court disagrees.

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt*, 53 F4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain,"

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

To begin with, this Court disagrees that the ALJ rejected plaintiff's testimony based solely on a lack of objective medical evidence fully corroborating it. Instead, the ALJ concluded that plaintiff's testimony regarding her fibromyalgia and resulting pain and limitations was *inconsistent* with her medical records. Tr. 19-21. The ALJ was "relying on any contradictions between a claimant's subjective symptom testimony and the objective medical evidence in the record to discount the symptom testimony," *Smartt*, 53 F.4th at 498 n. 4, which is permissible.

This Court also finds that the ALJ's conclusion that plaintiff's testimony was inconsistent with the medical records was supported by specific, clear and convincing reasons. The ALJ pointed to records showing that while plaintiff complained of an inability to stand, walk, or sit for any substantial length of time, and that her pain required her to elevate her legs and lie down or rest multiple times throughout the day, examinations from August and December 2018 showed a normal gait and range of motion, with those records also showing that plaintiff had some pain in her lumbosacral junction and paraspinal area with full flexion and extension, and that she experiences moderate pain with side bending to the left. Tr. 19 (citing Tr. 481, 494). The

ALJ also pointed to records from September 2018, in which plaintiff had a negative straight leg raise test, and another record from February 2019 where plaintiff demonstrated 5/5 motor strength and intact sensation despite spinal tenderness. Tr. 19 (citing 454, 417). A record from October 2019 showed plaintiff denied any arthralgias or myalgias, and demonstrated no problems moving any of her extremities. Tr. 422. Records from December 2019, plaintiff's date last insured, also reflect plaintiff had no joint pain, swelling, or edema in her extremities, no weakness, numbness, tingling, or syncope, that her back was non-tender to midline, had full range of motion, and no tenderness, and that her senses were grossly intact, despite imaging showing multilevel degenerative changes in her thoracic spine. Tr. 413-14.

Following her date last insured, in March 2020, plaintiff complained of worsening hip and back pain, with lower extremity muscle strength reduced to 4/5, widespread tenderness, and a stiff gait. Tr. 718. In May 2020, plaintiff began physical therapy, where her pain was assessed at 6/10 while seated, that it was 4/10 at its best, and 8/10 at its worst. Tr. 760. She also ambulated with an antalgic gait due to her right lower extremity, where she experienced more pain than on her left. Tr. 761. The ALJ noted that a July 2020 record noted that she displayed normal motor strength and range of motion even with some hip tenderness. Tr. 1285. Records from March, May, and September 2021 further noted that while she complained of being "completely disabled" due to fibromyalgia, she had normal sensorimotor function and range of motion, denied any weakness or gait problems, and her only observable issue being that she had a slight abnormality in how she rose from a chair at one appointment and not at another. Tr. 1157, 1162, 1198, 1207-08, 1237.

As for her ability to lift and carry, which plaintiff testified that she could only lift and carry up to 10 pounds as long it was not very often, the ALJ cited multiple records showing that

while she had reduced 4/5 motor strength in March 2020, many records demonstrate that her strength, muscle tone, and sensorimotor functions were intact. Tr. 20-21 (citing Tr. 669, 673, 677, 688, 693, 697, 718, 761, 783, 1207, 1333, 1341, 1346, 1351, 1356).

Plaintiff argues that some of the ALJ's cited physical examination records were done by plaintiff's behavioral health provider, Dr. Charles Jensen, as a component of a mental health status exam. Pl.'s Opening Br. 10. Plaintiff further argues that her medical records from May 2018 to May 2020 continuously document uncontrolled chronic back pain and fibromyalgia with neuropathy, with one record from as far back as November 2015. Pl.'s Opening Br. 10 (citing Tr. 325, 333, 357, 452, 462, 474, 484, 487, 510, 531, 708, 715, 759). Plaintiff's arguments, however, are unavailing. First, the fact that Dr. Jensen's observations of plaintiff's physical status were done as part of a mental status exam does not make those observations any less valid. Second, while plaintiff offers competing records, "[w]here the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi*, 486 F.3d at 1152.

Based on the record before the Court, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony based on inconsistent medical evidence.

**II.     Medical Opinions**

Plaintiff alleges that the ALJ failed to properly address the medical opinions provided by Anthony Browning, RN, Anne Pelletier, NP, and Dr. Michael Duffin, M.D. Pl.'s Opening Br. at 13-18. Specifically, she argues that the ALJ's reasoning for rejecting her providers' medical opinions is invalid, including that they were provided using check box forms and that substantial evidence did not support their rejection.

A.	**Legal standards**

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

"An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford*, 950 F.3d at 1155. A medical opinion presented in "check-the-box questionnaire" form cannot be rejected on that basis alone, but only when the questionnaire "do[es] not contain any explanation of the bases of their conclusions." *Ford*, 950 F.3d at 1155 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740–41 (9th Cir. 2023) (noting that the Ninth Circuit has "accepted discounting of a medical opinion set forth in a checkbox form with little to no explanation.").

### B.   Anthony Browning, RN

Plaintiff first argues that the ALJ improperly discredited Browning's opinion regarding the severity of her anxiety. Pl. Opening Br. This Court disagrees.

Browning served as plaintiff's mental health provider since July 23, 2015. Tr. 1115. In his opinion, plaintiff's anxiety was exacerbated by the death of her mother, that her prognosis was fair with ongoing treatment, and that her anxiety significantly affects her ability to pay attention and focus, and that she is very sensitive to stress. Tr. 1115, 1117. Notably, Browning found that plaintiff would have serious limitations in her ability to remember work-like

procedures, maintain attention for two hour segments, maintain regular attendance and punctuality, complete a workday and workweek without interruption from her symptoms, perform at a consistent pace without an unreasonable amount of breaks, follow instructions and receive criticism, deal with normal work stress, travel to an unfamiliar place, and use public transportation. Tr. 1117-18. He also believed plaintiff would be absent four days per month. Tr. 1119.

The ALJ found Browning's opinion unpersuasive he "presented his opinion primarily as a mere check box form, with no reference to objective medical records, and little rationale beyond a restatement of the claimant's diagnoses and subjective allegations." Tr. 15. This finding was supported by substantial evidence. Because Mr. Browning provided some narrative explanation of the basis for his opinion, that opinion could not be rejected solely because it utilized a check-the-box form. However, the ALJ could "take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford*, 950 F.3d at 1155. Here, the ALJ correctly concluded the opinion had no reference to the objective medical records and provided little rationale and did not, as plaintiff contends, reject the opinion merely because it utilized a check-the-box form.

The ALJ also explained how she considered the supportability and consistency factors. The ALJ correctly identified the lack of reference to objective medical records. Tr. 15. The ALJ also cited to records from March 2020 through June 2021, in which Mr. Browning noted that plaintiff has no memory impairments and is focused and appropriately attentive, and that her stress anxiety levels were higher due to her mother's death. Tr. 15-16 (citing Tr. 1190, 1208, 1334, 1338, 1341, 1347, 1351, 1356). The ALJ also concluded that Bowing's opinion was not consistent with other medical providers. Tr. 15. Thus, the ALJ provided an explanation,

supported by substantial evidence, as to why Browning's opinion was unsupported and inconsistent.

      C.      **Dr. Michael Duffin**

Plaintiff next argues that the ALJ improperly rejected Dr. Duffin's medical opinion based on his opinion being in check box form and because it was inconsistent with the medical evidence. Pl.'s Opening Br. at 17-18. This Court disagrees.

Dr. Duffin treated plaintiff for fibromyalgia for four months, from June to October 2021. Tr. 1324. He noted that plaintiff experiences pain everywhere except for her knees/ankles/feet, that the pain is daily and constant, that precipitating factors include changing weather, fatigue, cold, stress, and static positions, and that her medications cause "some drowsiness." Tr. 1325. Dr. Duffin further noted that plaintiff could only walk one block, that she could sit for up 30 minutes, that she could stand for 20 minutes, that she could sit for 4 hours in an eight-hour workday, that she could stand/walk for 2 hours in an eight-hour workday, that she would need to be able to change positions at will, and that she would need to walk around every 20 minutes for 12 minutes in an eight-hour workday. Tr. 1326. Dr. Duffin also noted that she would sometimes need to use a cane, that she would need unscheduled breaks to lie down or walk, and that she would need to elevate her legs 50 percent of the day at pelvis height. *Id*. Dr. Duffin found that plaintiff could frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, and never lift and carry 20 or 50 pounds. *Id*. Dr. Duffin also found that plaintiff could frequently look down, turn head right or left, and look up, that she could occasionally twist, stoop, and hold her head in a static position, that she could rarely climb stairs, and that she could never crouch or climb ladders. Tr. 1327. As for her reaching, handling, and fingering, in an eight-hour workday, plaintiff would be limited to using her hands to grasp, turn, and twist objects

only 60 percent, fine manipulation only 50 percent, reaching in front of her body only 40 percent, and no reaching overhead. *Id*. Plaintiff would be off task 25 percent or more in an eight-workday, is capable of low stress work, has good and bad days, and would miss more than four days of work per month. *Id*.

The ALJ found Dr. Duffin's opinion unpersuasive because it was in check box form, seemed to be a restatement of plaintiff's subjective complaints, and it was unsupported by Dr. Duffin's own treatment records and contradicted by records from only one month prior to plaintiff's first visit to Dr. Duffin. Tr. 23. Plaintiff argues that Dr. Duffin's opinion is well supported by the record, consistent with other medical opinions, and that his opinion is supported by his own treatment notes.

While Dr. Duffin's opinion does not contain a thorough explanation, it does contain some explanation, such as noting that plaintiff's pain is daily and constant, that her medications cause some drowsiness, that her leg will go numb if she stands for more than 20 minutes. Tr. 1325. Again, the ALJ could take into account the quality of the explanation when determining how much weight to give a medical opinion, but could not reject it solely on this basis.

Nor could the ALJ reject the opinion *solely* because it seemed to be a restatement of Plaintiff's complaints. Fibromyalgia is a unique medical condition, which is primarily "diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). The ALJ's reasoning for discounting Dr. Duffin's opinion is that it "refers only to the claimant's subjective symptoms," but considering fibromyalgia is diagnosed on the basis of subjective reports, that alone cannot serve as a basis for rejecting Dr. Duffin's opinion.

However, when evaluating Plaintiff's fibromyalgia, the ALJ could consider the inconsistency with the objective medical evidence in evaluating the supportability and consistency factors. *See Delaplain v. Comm'r of Soc. Sec. Admin.*, No. 2:15-CV-02439-HZ, 2017 WL 1234133, at *5 (D. Or. Mar. 17, 2017), *aff'd sub nom. Delaplain v. Saul*, 793 F. App'x 641 (9th Cir. 2020) (Here, unlike in *Benecke*, the ALJ discounted Dr. Tyne's opinion, not because it lacked objective evidence to support a diagnosis of fibromyalgia, but because Dr. Tyne's assessed restrictions contradicted her own treatment notes and the notes of Dr. Wagner."). As noted by the ALJ, Dr. Duffin's treatment records do not support the severe limitations assessed in his medical opinion. Tr. 15. Dr. Duffin noted that plaintiff had a normal affect, that she had good range of motion in her joints, her get up and go test was normal, she can rise from a chair without difficulty, walk a significant distance, turn around, and sit down. Tr. 1157. But in the very next page of his assessment, Dr. Duffin notes that her medications are not working and that she has poor functional status. Tr. 1158. He also notes that her medications are not "completely effective," and that she still suffers from "nonrestorative sleep, fatigue, headaches and diffuse body pain." Tr. 1156. Plaintiff now points to other evidence in the record and other medical opinions that support Dr. Duffin's conclusion but Dr. Duffin's opinion itself is conclusory and does not reference this evidence.

In sum, the ALJ was permitted to take in to account the cursory nature of Dr. Duffin's opinion and the inconsistencies with the objective medical evidence. Thus, the ALJ provided an explanation, supported by substantial evidence, as to why Dr. Duffin's opinion was unsupported and inconsistent. the ALJ did not err in finding Dr. Duffin's opinion unpersuasive.

### D.      Anne Pelletier, RN

Plaintiff next argues that the ALJ improperly rejected Pelletier's medical opinion, raising the same argument that plaintiff raised with respect to Browning. Pl. Opening Br. 17-18. Plaintiff also argues that her medical records following her date last insured support Pelletier's medical opinion, that the records relied upon by the ALJ were for reasons unrelated to her fibromyalgia, and that she remained in treatment for back pain and neuropathy, which included ongoing physical therapy. Pl.'s Opening Br. at 16-17. Again, this Court disagrees.

Pelletier began treating plaintiff in August 2019. Tr. 1110. In her medical opinion, Pelletier stated that plaintiff would need to walk around every 60 minutes for 15 minutes at a time, that she would need unscheduled breaks, that she would not need to lie down or sit quietly, and that she did not need to elevate her legs. Tr. 1112. Pelletier believed plaintiff could rarely lift and carry 10 or 20 pounds, could never lift and carry 50 pounds, could rarely twist, stoop, climb ladders and stairs, never crouch/squat, and could frequently look down, turn head right or left, look up, and hold head in a static position. *Id*. Regarding her hands, plaintiff had no limitations in fine manipulation, could use her hands to grasp, turn and twist objects 80 percent of an eight-hour workday, and could only reach out in front and overhead 50 percent of an eight-hour workday. Tr. 1113. Pelletier also noted plaintiff would be off task 25 percent or more of an eight-hour workday, that she is capable of tolerating moderate stress, that she has good and bad days, and that she would be absent from work at least 4 days per month. Tr. 1113.

The ALJ found Pelletier's opinion unpersuasive because it was based on plaintiff's subjective complaints and because it was inconsistent with other evidence in the record. Tr. 22. Specifically, the ALJ cited to a record from Pelletier in March 2020 in which plaintiff had a stiff gait and 4/5 motor strength in her lower extremities. Tr. 718. The ALJ noted that this was a

temporary exacerbation when compared to a medical record from July 2020, in which plaintiff had normal motor strength and range of motion, and that records from March and May 2021 show she was negative for gait problems and weakness, though she was positive for numbness. Tr. 1207, 1228, 1279. The ALJ was entitled to rely on these inconsistencies to reject Pelletier's limitations as "overly restrictive." Tr. 22. As such, the ALJ did not err in finding Pelletier's opinion unpersuasive.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 5th day of August 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge